**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

HELENA ARMSTRONG and LYNN MOORE
*on behalf of themselves and others similarly situated,*

                Plaintiffs,

    v.

SUNDAY RILEY MODERN SKINCARE, LLC,

              Defendant.

---

Case No.:

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

Plaintiffs, HELENA ARMSTRONG and LYNN MOORE (hereinafter, "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby files this Class Action Complaint against Defendant, SUNDAY RILEY MODERN SKINCARE, LLC ("Defendant") and state as follows based upon their own personal knowledge and the investigation of their counsel:

## NATURE OF THE ACTION

1.    For centuries, humans have attempted to find ways to maintain their youthful appearances. Many products are sold based on their purported ability to cosmetically mask signs of aging. Other products claim to do more than alter appearance, and to actually change the physical properties of skin by preventing, eliminating, or reversing the aging process itself.

2.      Like a modern-day snake oil salesman, SUNDAY RILEY MODERN SKINCARE, LLC ("Sunday Riley" or "Defendant") preys on consumers' fundamental fear of aging by marketing the "Bionic Anti-Aging Cream" product (the "Bionic Anti-Aging Cream" or "Product") as if it were an FDA approved drug that could change the physical structure and function of skin itself.

3.      Defendant's drug claims are false, misleading, and reasonably likely to deceive the public because nothing in the Product is effective in causing physiological changes to the structure and function of the skin and thereby preventing, repairing and/or reversing the effects of aging. The Product was not approved by the FDA to be marketed as a drug, because it is **not** a functioning drug. The FDA defines cosmetics that affect the structure of the skin as drugs "A product intended to be applied to the human body for cleansing, beautifying, promoting attractiveness, or altering the appearance is a cosmetic. If this product claims to accomplish these deeds through physiological activity or by changing the structure of the skin, it is also a drug."[1] The FDCA defines substances as "drugs" if they are "articles (other than food) intended to affect the structure or any function of the body of man ..." 21 U.S.C.S. § 321.

4.      Sunday Riley profits handsomely by making false, deceptive and misleading claims about the Product's physiological effects in Product packaging, online Product descriptions, and other promotional material. In other words, Sunday Riley claims that the Product has specific drug-like effects on the structure and function of the human skin and body. For example, among other things, Sunday Riley specifically promises that:

- "Bionic [Anti-Aging Cream] is the "multi-vitamin" of anti-aging creams, **combatting [sic] every anti-aging concern and cause of aging.**"

---

[1] Food and Drug Administration Cosmetic Labeling Guide, http://www.fda.gov/Cosmetics/Labeling/Regulations/ucm126444.htm#clga (Last accessed 11/9/17).

- The Product is "[l]oaded with active ingredients that **help to extend the lifespan of your skin[.]"**

- "Loaded with Resveratrol and EGCG, ingredients that **activate your body's ability to extend the lifespan of our cells (true anti-aging!) and repair and restore collagen,** the "building block" of the skin."

- "Co-Q10, EMPP, and copper peptides help **regenerate skin** while you are sleeping."

- "Highly active CoQ10, transresveratrol, biopeptides, copper peptides, centella asiatica, + EGCG (from green tea) help **support healthy collagen growth and fight the effects of skin aging** caused by UV exposure."

- "Thanks to UV repair benefits of EGCG and Resveratrol, it **combats pollution exposure** and is a great post-UV product."

- "[H]elp **prevent + reverse the effects of aging** with CoQ10, trans-resveratrol, biopeptides, + green tea."

5.     Unfortunately, unbeknownst to consumers, these efficacy claims (and the others detailed below) are false, deceptive and misleading.

6.     As explained more fully herein, Sunday Riley has made, and continues to make, deceptive and misleading claims and promises to consumers about the efficacy of its Bionic Anti-Aging Cream in a pervasive, nation-wide marketing scheme that confuses and misleads consumers about the true nature of the Product. In reality, the Bionic Anti-Aging Cream does not - and cannot – live up to the claims made by Sunday Riley.

7.     Sunday Riley knows this, yet designs its marketing and advertising campaign to include indicia of scientific research and promises of specific results for the sole purpose of misleading and deceiving consumers. As a result, Sunday Riley's marketing pitch is the same as that of the quintessential snake-oil salesman – Sunday Riley dupes consumers with false and misleading promises it knows it cannot deliver, and does so with one goal in mind – reaping enormous profits.

3

8.      Indeed, the only reason a consumer would purchase the premium-priced Bionic Anti-Aging Cream sold by Sunday Riley is to obtain the drug-like anti-aging efficacy that Sunday Riley promises, i.e., physiological changes to the structure and function of the skin to prevent, eliminate, or reverse aging, not mere cosmetic changes to the appearance of the skin. Such claims made by Sunday Riley are deceptive and misleading because the Product is only a cosmetic, and not also a drug. By making such false claims, Sunday Riley induces consumers to purchase the Product at a premium.

9.      A direct effect of this pervasive and deceptive marketing campaign is that consumers across the country, including Plaintiffs and the proposed Classes, were exposed to Sunday Riley's false and misleading misrepresentations and purchased Bionic Anti-Aging Cream for exorbitant prices with ingredients that do not, and cannot, provide the results promised.

10.      Sunday Riley's marketing campaigns for the Bionic Anti-Aging Cream all follow the same deceptive pattern and practice – Sunday Riley makes specific efficacy promises based on purported scientific research and new discoveries of specific ingredients. These claims and promises deceive and mislead consumers into believing that the Product they are purchasing will provide the promised structural changes to the skin. Such promises are deceptive and misleading.

11.      Regardless of where Plaintiffs and the other members of the Classes purchased the Bionic Anti-Aging Cream (i.e., w h e t h e r in person from specialty retail stores such as Sephora or from online retailers such as www.beauty.com or www.nordstrom.com), they were exposed to Sunday Riley's pervasive deceptive and misleading advertising messages and material omissions regarding the efficacy promises of the Bionic Anti-Aging Cream. Indeed,

no reasonable consumer would purchase the Product for the premium price charged by Sunday Riley – or any price – without relying on claims regarding what the Product purports to do.

12.     Plaintiffs seek relief in this action individually and on behalf of two proposed Classes consisting of all purchasers in 1) New York and 2) California of at least one of the Bionic Anti-Aging Cream Products ("the Classes") at any time from the date of product launch to the present (the "Class Period"). Plaintiffs and the Classes seek relief for unjust enrichment, breach of express warranty, negligent misrepresentation, and for violation of the New York Deceptive and Unfair Trade Practices Act, N.Y. GBL § 349, New York Unlawful False Advertising Act, N.Y. GBL § 350, California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq*. Pending completion of discovery, Plaintiffs may seek leave to amend the Class definitions.

13.     Plaintiffs bring this action on behalf of themselves and all other similarly situated consumers nationwide, who, from the applicable limitations period up to and including the present (the "Class Period"), purchased the Product. Plaintiffs seek to end Defendant's dissemination of this false and misleading advertising message, correct the false and misleading perception it has created in the minds of consumers, and to obtain redress for those who have purchased the Product.

## JURISDICTION AND VENUE

14.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d). This is a putative class action whereby: (i) the proposed classes each consists of over 100 class members; (ii) at least some of the proposed class members have a different citizenship

from Defendant; and (iii) the amount in controversy exceeds the sum of value of $5,000,000.00, excluding interest and costs.

15.    The Court has jurisdiction over the federal claims alleged herein pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States.

16.    The Court has jurisdiction over the state law claims because they form part of the same case or controversy under Article III of the United States Constitution.

17.    Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

18.    This Court has personal jurisdiction over Defendant because its Product is advertised, marketed, distributed, and sold throughout New York State; Defendant engaged in the wrongdoing alleged in this Complaint throughout the United States, including in New York State; Defendant is authorized to do business in New York State; and Defendant has sufficient minimum contacts with New York and/or otherwise have intentionally availed themselves of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant is engaged in substantial and not isolated activity within New York State.

19.    Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391(a) and (b), because a substantial part of the events giving rise to Plaintiff ARMSTRONG's claims occurred in this District and Defendant is subject to personal jurisdiction in this District. Plaintiff resides in, purchased and used Defendant's Product in New York County.

## PARTIES

20.    Plaintiff HELENA ARMSTRONG is a citizen of the State of New York and resides in New York County, New York. In or about 2016, Plaintiff ARMSTRONG was exposed to and saw Defendant's anti-aging claims on the Product page on www.beauty.com, including that "[the Product] is the 'multi-vitamin' of anti-aging creams, **combating** every anti-aging concern and **cause of aging**," is "[l]oaded with Resveratrol and EGCG, ingredients that **activate your body's ability to extend the lifespan of our cells (true anti-aging!) and repair and restore collagen, the 'building block' of the skin**[,]" contains "Co-Q10, EMPP, and Copper Peptides [which] **help the skin to repair and restore while you are sleeping - particularly helpful during times of stress or when you are not getting enough rest**[,]" "[h]elps provide the skin energy and nutrients to **regenerate skin, repair damage, and build strong collagen**[,]" and "[t]hanks to **UV repair benefits of EGCG and Resveratrol, it combats pollution exposure** and is a great post-UV product." In reliance on such claims, Plaintiff ARMSTRONG purchased the Product for personal consumption on www.beauty.com, which was mailed to her residence. The retail purchase price was approximately $125.00 for one 1.70 ounce bottle of the Product. Plaintiff ARMSTRONG purchased and used the Product reasonably believing it would provide the advertised anti-aging benefits, although the Product did not work because it is not a drug capable of changing the structure and function of skin. As a result of her purchase, Plaintiff ARMSTRONG suffered injury in fact and lost money. Had Plaintiff ARMSTRONG known the truth about Defendant's misrepresentations and omissions, she would not have purchased the premium-priced Product. Plaintiff ARMSTRONG is not claiming physical harm or seeking the recovery of personal injury damages.

21.    Plaintiff LYNN MOORE is a citizen of the State of California and resides in San Ramon, California. In or about 2016, Plaintiff MOORE was exposed to and saw Defendant's

anti-aging claims on www.nordstrom.com, including that "[the Product] is the multi-vitamin of anti-aging creams, **combating** every anti-aging concern and **cause of aging**[,]" is "loaded with resveratrol and EGCG, ingredients that **activate your body's ability to extend the lifespan of our cells and repair and restore collagen, the building block of the skin**[,]" contains "Co-Q10, EMPP and copper peptides help skin combat pollution, **repair the effects of UV exposure and restore while you are sleeping - particularly helpful during times of stress or lack of rest**[,]" and "[h]elps provide the energy and nutrients to **regenerate skin, repair damage and build strong collagen**." In reliance on such anti-aging claims, Plaintiff MOORE purchased the Product for personal consumption on www.nordstrom.com, which was mailed to her residence. The retail purchase price was approximately $125.00 for one 1.70 ounce bottle of the Product. Plaintiff MOORE purchased and used the Product reasonably believing it would provide the advertised anti-aging benefits, although the Product did not work because it is not a drug capable of changing the structure and function of skin. As a result of her purchases, Plaintiff MOORE suffered injury in fact and lost money. Had Plaintiff MOORE known the truth about Defendant's misrepresentations and omissions, she would not have purchased the premium-priced Product. Plaintiff MOORE is not claiming physical harm or seeking the recovery of personal injury damages.

22.    Defendant SUNDAY RILEY MODERN SKINCARE, LLC is a business corporation organized under the laws of the state of Texas, with its principal place of business and an address for service of process at 4411 Montrose Blvd., Ste. 200, Houston, TX 77006-5854. At all relevant times, Defendant developed and manufactured cosmetic products for consumer markets under the "Sunday Riley" brand name. It provides cosmetic products throughout the United States through a network of suppliers.

## FACTUAL ALLEGATIONS

**The Bionic Anti-Aging Cream**

23.     The Sunday Riley brand cosmetics and skin care products are sold by large online retailers such as www.sephora.com, www.nordstrom.com and www.beauty.com.

24.     Defendant manufactures, distributes, markets, and sells nationwide the Bionic Anti-Aging Cream (the "Product") under the Sunday Riley brand name. The Product is a 1.7 fl. oz. bottle of cream used to be applied to facial areas. The Product retails for approximately $125.00 per bottle (see picture of the Product below).



http://www.inhautepursuit.com/wp-content/uploads/2015/11/sunday-riley-bionic-anti-aging-cream-review-inhautepursuit-e1447244664697.jpg

25.     A central theme of Sunday Riley's deceptive marketing campaign, which permeates throughout its print, television, in-store and web-based advertisements and product

displays, is that the Bionic Anti-Aging Cream does not merely alter the appearance of the skin but actually causes physiological changes to the structure and function of the skin by "**combating …** **causes of aging,**" "**activat[ing] your body's ability to extend the lifespan of our cells,**" "**repair[ing] and restor[ing] collagen, the 'building block' of the skin** … particularly helpful **during times of stress or when you are not getting enough rest,**" "provid[ing] the skin energy and nutrients to **regenerate skin, repair damage, and build strong collagen,**" "**combat[ing] pollution exposure,**" etc. In other words, Sunday Riley claims that the Product functions as a skin-altering drug, not as a mere cosmetic. As described in more detail below, Sunday Riley's marketing campaign reinforces its false promise of anti-aging efficacy by highlighting scientific research, including studies, and repeatedly referencing scientific sounding terms.

26. Sunday Riley deliberately made such false claims that its Product does not merely alter the appearance of skin but actually causes physiological changes to the structure and functioning of the skin in preventing, eliminating and/or reversing the effect of aging. Sunday Riley also misleadingly implied that its Products' ability to change the structure and function of skin is supported by "research" and "studies". Sunday Riley was thereby able to charge an exorbitant price for the Product, even though the Product does not work.

27. Sunday Riley's specific claims of efficacy cannot be defended as mere puffery. Sunday Riley's claims of scientifically backed research and unique ingredient discoveries go beyond any mere sales puffery by claiming that the Products' ingredients enable the Bionic Anti-Aging Cream to provide the structural skin changes and then by referencing specific "research" and "study" affirmations of those benefits. Indeed, such specific scientific references are an integral part of its marketing campaign, as evidenced by Sunday Riley's reliance on such false and misleading efficacy promises.

**Defendant's False and Deceptive Advertising, Packaging and Labeling Practices**

28.    Throughout its advertising, promotion, packaging and labeling of the Bionic Anti-Aging Cream, Defendant has consistently conveyed the very specific message to consumers that the Product, with a series of "key ingredients," all of which have been "shown" by "recent research" or "studies" to demonstrate anti-aging efficacy, is not merely a cosmetic, but a product which actually causes physiological changes to the structure and function of the skin by preventing, eliminating and/or reversing the effect of aging. The whole concept of the Bionic Anti-Aging Cream is premised upon such deception.

29.    In reality, Defendant fails to reference any specific scientific study or research which would support its very specific claims of physiological effect on the structure or functions of the skin because the scientific consensus is that Sunday Riley's ingredients do not have this effect, particularly at the doses in the Product. It is not true that the Product is effective in preventing, eliminating and/or reversing the effect of aging, i.e., that the Product "**combat[s] … causes of aging**," "**activate[s] your body's ability to extend the lifespan of [] cells**," "**repair[s] and restore[s] collagen**," "**provide[s] the skin energy and nutrients to regenerate skin, repair damage, and build strong collagen**," and "**combats pollution exposure**."

30.    Since launching the Bionic Anti-Aging Cream, Defendant has consistently conveyed such uniform, deceptive message to consumers throughout the United States, including in New York and California.

31.    Defendant has made and repeated its anti-aging claims across a variety of media, including on the product page of large online retailers such as Nordstrom and Sephora (see below), where orders for the Product can be placed directly, as well as in online promotional materials, social media, and all over the entire Product packaging where it cannot be missed by

consumers when purchasing the Product in physical stores. Defendant's anti-aging claims are false, misleading, deceptive, and ubiquitous.

*Packaging and Labels*

32.    Sunday Riley's false, misleading, and deceptive marketing campaign begins with the Product's packaging and labels. Representations touting the Product's anti-aging effects permeate the Product's cardboard box packaging, as well as the front and back labels on the pump dispensing bottle. On the front of the cardboard box packaging of every Bionic Anti-Aging Cream (*see* picture below to the right) it prominently states:

> Highly active CoQ10, transresveratrol, biopeptides, copper peptides, centella asiatica, + EGCG (from green tea) **help support healthy collagen growth and fight the effects of skin aging caused by UV exposure**.



33.     On the left side panel of the packaging (see picture above to the left) of the Product, Sunday Riley lists a number of "Key Ingredients" and buttresses its anti-aging claims by representing that each of the ingredients are either "shown" or "demonstrated" by "research" or "studies" to be providing anti-aging benefits, i.e., that the Product actually causes physiological changes to the structure and functioning of the skin by "**neutraliz[ing] free radicals in the skin cells,**" "**stimulat[ing] collagen and glycosaminoglycan synthesis,**" being "**effective against various forms of skin irritation,**" having "**anti-inflammatory effects,**" the

"ability to improve skin healing and support collagen growth," "calm inflammation, support youthful collagen growth, and improve circulation," and "support strong skin fibroblasts (the cells which grow collagen)":

> **Co-Q10**: A biologically active cellular antioxidant and quinone, found in our own mitochondria. Topically, CoQ10 has been **shown to neutralize free radicals in the skin cells**. Recent research suggests that topically applied CoQ10 may also protect the skin against aging caused by exposure to ultraviolet light.

> **Transresveratrol**: the antioxidant ability of resveratrol has been shown to be greater than vitamins E, C, and idebenone. Studies have demonstrated resveratrol may be able to protect against UVB induced damage.

> **Biopeptide CL**: a messenger peptide for collagen renewal, it has been **shown to stimulate collagen and glycosaminoglycan synthesis**, and diminish the appearance of wrinkles.

> **Copper Peptides**: A compound consisting of a peptide and a copper atom, shown to be **effective against various forms of skin irritation, mainly due to its anti-inflammatory effects**. Studies demonstrate copper peptide's ability to **improve skin healing and support collagen growth**.

> **Centella Asiatica**: An ancient healing plant rich in asiaticoside (which induces Collagen 1 synthesis), used in traditional Chinese and Ayurvedic medicine. Recent research demonstrates its ability to **calm inflammation, support youthful collagen growth, and improve circulation**.

> **EGCG from Green Tea**: The most powerful of the green tea antioxidants, EGCG has been shown to fight damage from UV exposure. EGCG has also been shown to help **support strong skin fibroblasts (the cells which grow collagen)**.

34.    Defendant uses an asterisk next to the phrase "Key Ingredients," which links to an infinitesimal, 6-point font disclaimer on the bottom side of the cardboard box packaging, which states:

> *Ingredient qualities are proven via in-vivo or in-vitro testing, or are beliefs commonly held in holistic, traditional, and/or alternative medicine. These statements have not been approved by the FDA. Statements not intended to diagnose, treat, or cure disease.



35.    Such disclaimer only belies Sunday Riley's intent to deceive or mislead consumers into believing its anti-aging claims and at the same time attempt to stave off any legal liability. Defendant's attempt is made in vain because the disclaimer is printed in infinitesimal font. In addition, it is placed on the bottom of the Product's cardboard box packaging where it would not be viewed by consumers.

36.    Moreover, the generalized disclaimer that Sunday Riley's "[s]tatements [are] not intended to diagnose, treat, or cure disease" does not negate or disclaim its specific anti-aging claims, which are, in effect, unauthorized drug claims because they represent that the Product does not merely alter the appearance of the skin but actually causes a serial of specific physiological changes to the skin, all culminating in the "true" reversal and prevention of the effect of aging.

37.    The labeling on the pump dispensing bottle of the Bionic Anti-Aging Cream, again, parrots Defendant's claims regarding the Product's effect on the physiological structure of skin. On the front label on the bottle it prominently states, in a gold-rimmed text box, that the Product is intended "[t]o help **prevent + reverse the effects of aging** with CoQ10, trans-

resveratrol, biopeptides, + green tea." (*See* picture of front label of the Product below). On the

back of the bottle, Defendant states in capital letters on the top part of the label –

HIGH PERFORMANCE

CLEAN TECHNOLOGY

Beneath the "Directions" section, Defendant, yet again, claims that the Product –

**Rebuilds collagen, stimulates elastin production, reverses premature photoaging, and increases skin energy**. With EGCG, CoQ10, resveratrol, biopeptides, retinyl palmitate, copper peptides, and centella asiatica.

Sunday Riley skincare is a perfect union between **advanced anti-aging science** + pure, potent botanicals for high performance, instant results skincare made with green technology. (*See* picture of the back label of the Product below).



*Online Product Description*

38.     Defendant's exhaustive advertising campaign also includes its product descriptions and advertisements on online retailers' product page, where orders for the Product can be placed directly. For example, on the product page on www.beauty.com where the Bionic Anti-Aging Cream can be ordered directly (attached herein as **EXHIBIT A**), Defendant represents that the Bionic Anti-Aging Cream:

> *Bionic is the "multi-vitamin" of anti-aging creams, **combatting [sic] every anti-aging concern and cause of aging**.*
>
> Loaded with Resveratrol and EGCG, ingredients that activate your body's ability to **extend the lifespan of our cells (true anti-aging!) and repair and restore collagen**, the "building block" of the skin. Co-Q10, EMPP, and Copper Peptides help the **skin to repair and restore while you are sleeping-** particularly helpful during times of stress or when you are not getting enough rest. Helps provide the skin energy and nutrients to **regenerate skin, repair damage, and build strong collagen**. Anti-oxidants **restore and protect skin**. Thanks to UV repair benefits of EGCG and Resveratrol, it **combats pollution exposure** and is a great post-UV product.

The same representations by Sunday Riley can also be found on the product page on large high-end retailers' online stores such as Sephora (www.sephora.com), Nordstrom (www.nordstrom.com) and Space.NK. (www.spacenk.com) (attached herein as **EXHIBIT B**, **C** and **D**, respectively). Because such representations are stated in the product description section right below the ""Add to Bag" or "Add to Cart" buttons, a consumer who orders the Product online simply cannot miss them when placing an order.

39.     Defendant's drug claims are false, misleading, and reasonably likely to deceive the public because nothing in the Product is effective in causing physiological changes to the structure and function of the skin and thereby preventing, repairing and/or reversing the effects of aging.

40.    Similarly, on the online store for Barney's New York (www.barneys.com) (attached herein as **EXHIBIT E**), Sunday Riley states in the "Details" section on the product page of the Bionic Anti-Aging Cream:

> Built on hydration and anti-aging fusion technology. Highest concentration of key ingredients to **rebuild collagen, stimulate elastin productions, densify the skin, reverse photodamage and increase skin energy**. All emerging anti-aging technologies and causes of aging covered in the creation of this stimulating, cutting-edge product.

41.    Upon information and belief, during the Class period, Defendant also promoted the Product on its proprietary, official website (www.sundayriley.com) and on social media such as Facebook and Twitter, promoting the same, uniform message that the Product does not only alter the appearance of the skin but also causes physiological changes to the structure and function of the skin and thereby prevents, repairs and/or reverses the effects of aging.

42.    Defendant's specific claims as to the Product's "true" anti-aging impact on the physiological structure and functions of the skin in preventing, eliminating and/or reversing the effect of aging are unauthorized, deceptive, misleading claims only appropriate for FDA approved drugs and are not mere puffery.

**The Results of Sunday Riley's Deceptive Conduct**

43.    Sunday Riley's pervasive false and misleading marketing campaign leaves consumers with the impression that its products are uniquely able to provide certain effects on human skin.

44.    Sunday Riley compounds this deception by maintaining that the Product and the promised results are based on research and scientific study and unique ingredients.

45.    Sunday Riley reinforces this point with its repeated references to research, studies, claims of innovative technology, and other authorities, all as a way to bolster the credibility of the products in the eyes of the consumer. In fact, these claims are merely part and

parcel of Defendant's false and misleading advertising program for its Bionic Anti-Aging Cream.

46.    In addition to the affirmative material misrepresentations as described herein, Defendant's actions are likewise actionable based on its material omissions, which similarly induced Plaintiffs and the other members of the Classes to purchase Bionic Anti-Aging Cream. For example, Defendant has failed to disclose the following:

- That the FDA considers the following effects as affecting the structure or function of the body and therefore would require the Product to be registered as a drug:

  - Rebuild, repair and restore collagen

  - Stimulate elastin production

  - Reverse premature photoaging

  - Extend the lifespan of cells

  - Extend the lifespan of skin

  - Regenerate skin

  - Combat pollution exposure

  - Neutralize free radicals in the skin cells

  - Protect the skin against aging caused by exposure to ultraviolet light

  - Stimulate collagen and glycosaminoglycan synthesis

  - Treat skin irritation, mainly due to its anti-inflammatory effects

  - Calm inflammation

  - Improve circulation

- That the Bionic Anti-Aging Cream does not provide unique benefits as a cosmetic that cannot be found in other, less expensive products; and

- That any benefits actually provided by the use of the Bionic Anti-Aging Cream are only cosmetics in nature, i.e., only changes the appearance of the skin temporarily and does not affect the structure or function of the skin.

47.     Sunday Riley is in a position to actually know, or should know, that the promised results are not possible, *i.e.* the Product cannot regenerate skin, reverse premature photoaging, rebuild collagen, extend the lifespan of cells, extend the lifespan of skin, or provide the other promised results that only a drug could produce. Sunday Riley fails to disclose that its Product does not perform as promised.

48.     A reasonable consumer would not interpret Defendant's anti-aging claims as being purely cosmetic in nature because Defendant made specific claims as to the physiological changes the Product purportedly causes to the structure and functioning of the skin in preventing, eliminating and/or reversing the effect of aging. By contrast, Defendant's promotion of its other products uses language that more clearly indicates that the product's results are purely cosmetic by using phrases such as "the **appearance** of wrinkles," "the **visible** signs of aging," and "healthy-**looking** complexion."

49.     Until such time as Sunday Riley ceases to engage in deceptive and misleading advertising of the Bionic Anti-Aging Cream, Plaintiffs and the other members of the Classes will continue to be harmed.

50.     Sunday Riley's anti-aging claims are the entire purpose of the Product, as detailed in its marketing campaign. Sunday Riley knew that consumers are willing to pay premium prices for anti-aging products that use ingredients causing physiological changes to the structure and function of the skin, not just cosmetic changes. Sunday Riley intended that consumers rely on its anti-aging claims and be duped into paying an exorbitant price for the Product, as if it were an effective drug.

51.    Sunday Riley also is aware that, due to the aging population, consumers are increasingly susceptible to such deceptive marketing and advertising and that such marketing and advertising will continue to yield ever-greater profits.

52.    Indeed, it is for these precise reasons – increased sales and profits – that Sunday Riley intentionally engages in its deceptive marketing and advertising campaign.

53.    Sunday Riley has succeeded in its deceit and has in fact reaped a massive windfall from its deceptive campaigns advertising the premium-priced Product. Such enormous profits would not have occurred but for Sunday Riley's deceptive and misleading marketing and advertising campaign because consumers would have purchased similar products that were truthfully advertised as being non-drug cosmetics and moisturizers. Such products are cheaper than the Product because the Product can only be sold at its premium price on the basis of false and misleading claims that it is an effective drug.

54.    Sunday Riley charges a premium price of approximately $125 for the Product, despite its inability to function as promised. Plaintiffs and the other members of the Classes would not have purchased the Product had they known that the Product claims made through deceptive marketing promises were false.

55.    Plaintiffs and the other members of the Class believed they were purchasing Products that would provide the promised benefits as detailed herein. In reality, although Plaintiffs and the other members of the Class paid for these purported benefits, they did not get what they paid for.

56.    As a result and because of Sunday Riley's deceptive marketing, Plaintiffs and the Class members have been harmed in their purchases of the Bionic Anti-Aging Cream.

57.    Without knowing the truth as to the efficacy of the Bionic Anti-Aging Cream, Plaintiffs and the other members of the Classes paid exorbitant premiums for the Product. Moisturizers and cosmetics that are not falsely advertised as changing the structure and function of the skin cost merely a fraction of the price of the Product. See the chart below for a list of comparable moisturizer products, each containing some of the "Key Ingredients" contained in the Product. It is telling that a bottle of the Product is more expensive than **all of the below cosmetics and moisturizers combined**, despite the fact that the Product has less than a fifth as much volume as all the listed cosmetics and moisturizers combined. The only reason a consumer would pay the premium price of $125 for the Bionic Anti-Aging Cream is to obtain the anti-aging benefits that Defendant falsely claims the Product provides.

| Product | Size | Price | Seller | "Key Ingredients' contained |
|---|---|---|---|---|
| derma e Anti-Wrinkle Vitamin A Retinyl Palmitate Creme | 4 fl. oz. | $7.78 | www.ulta.com | Retinyl Palmitate |
| Eucerin Q10 Anti-Wrinkle Creme | 1.7 oz. | $11.99 | www.ulta.com | Coenzyme Q10 |
| Majestic Pure Eye Gel | 1.7 oz. | $15.50 | www.drugstore.com | Centella Asiatica; Peptides |
| Madre Labs, Camellia Care, EGCG Green Tea Skin Cream | 1.7 oz. | $9.95 | www.iherb.com | Resveratrol; EGCG |

58.    To the extent that any members of the Classes would have been willing to purchase a cosmetic moisturizer with ingredients such as those of the Product, they would only have been willing to pay prices commensurate to the Products value as a moisturizer. Purchasing

the four products listed above would cost about $45.22 for 9.1 oz. of product, about $4.97 per ounce, or $8.45 per 1.7 ounces of product. Sunday Riley charges about $125 for 1.7 ounces of product, or $73.53 per ounce. The difference of $116.55 is the price premium that Sunday Riley was only able to charge because it made false claims about the efficacy of the Product.

## CLASS ACTION ALLEGATIONS

59.    Plaintiffs seek relief in their individual capacity and as representative of all others who are similarly situated. Pursuant to Rule 23(a), 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs seek certification of the following classes:

a.    The New York Class

All persons or entities in New York who purchase for personal use the Product within the applicable statute of limitations, and/or such subclasses as the Court may deem appropriate, until the date of notice is disseminated.

b.    The California Class

All persons or entities in California who purchase for personal use the Product within the applicable statute of limitations, and/or such subclasses as the Court may deem appropriate, until the date of notice is disseminated.

60.    Excluded from the Classes are Defendant's current and former officers, directors, and employees, and those who purchased the Product for the purpose of resale. Also excluded from the Classes is the judicial officer to whom this lawsuit is assigned.

61.    Plaintiffs reserve the right to revise the Class definitions based on facts learned in the course of litigating this matter.

62.    *Numerosity*. While the exact number and identities of purchasers of the Product are unknown to Plaintiffs at this time, Plaintiffs are informed and believe that the New York and

California Classes (collectively, the "Classes" or "Class Members") contain thousands of purchasers and are so numerous that individual joinder of all Class members is impracticable.

63.    *Existence and Predominance of Common Questions of Law and Fact*. Questions of law and fact arise from Defendant's conduct described herein. Such questions are common to all Class members and predominate over any questions affecting only individual Class members and include:

        i.   Whether the Product claims discussed above are false, misleading, and/or objectively likely to deceive;

        ii.   Whether Defendant's marketing and advertising of the Product is false, fraudulent, deceptive, unlawful, or misleading;

        iii.   Whether Defendant has breached warranties made to the consuming public about their Product;

        iv.   Whether Defendant's marketing, promotion, advertising and sale of the Product is and was a deceptive act or practice in the conduct of business directed at consumers, giving rise to consumer law violations in New York and California;

        v.   Whether Plaintiffs and members of the Classes sustained monetary loss and the proper measure of loss;

        vi.   Whether Plaintiffs and other members of the Class are entitled to other appropriate remedies, including equitable relief; and

64.    *Typicality*. Plaintiffs' claims are typical of those of the Class members because, *inter alia*, Plaintiffs and the other Class members were all injured by same uniform conduct, as detailed herein, and were subject to Defendant's anti-aging claims that accompanied each and

every Bionic Anti-Aging Cream Product that Defendant sold. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Classes.

65.    ***Adequacy of Representation***. Plaintiffs will fairly and adequately represent and protect the interests of the Classes and have retained competent counsel experienced in prosecuting nationwide and multi-state class actions. Plaintiffs understand the nature of their claims herein, have no disqualifying conditions, and will vigorously represent the interests of the Classes.  Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to the interests of the Classes.

66.    ***Superiority***. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by any individual Class member is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. Thus, it would not be economically feasible for an individual Class member to prosecute a separate action on an individual basis, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

67.    The prerequisites to maintaining a class action for equitable relief pursuant to Rule 23(b)(2) are also met, as Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final equitable relief with respect to the Classes as a whole.

68.    Plaintiffs seek preliminary and permanent equitable relief on behalf of the entire Class, on grounds generally applicable to the entirety of the Classes, to enjoin and prevent

Defendant from engaging in the acts described, and requiring Defendant to provide full restitution to Plaintiffs and Class members.

69.    Unless Classes are certified, Defendant will retain monies that were taken from Plaintiffs and Class members as a result of their misconduct.

## CAUSES OF ACTION

### COUNT I

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
### (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)
### (On Behalf of the New York Class)

70.    Plaintiff ARMSTRONG realleges and incorporates herein by reference all allegations contained above as if fully set forth herein and further alleges as follows:

71.    Plaintiff ARMSTRONG brings this claim individually and on behalf of the other members of the New York Class for an injunction and damages for violations of New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349 ("NY GBL").

72.    Defendant's business acts, practices and/or omissions alleged herein constitute deceptive acts or practices under NY GBL § 349, which were enacted to protect the consuming public from those who engage in unconscionable, deceptive or unfair acts or practices in the conduct of any business, trade or commerce.

73.    The practices of Defendant described throughout this Complaint were specifically directed to consumers and violate the NY GBL § 349 for, inter alia, one or more of the following reasons:

a.    Defendant engaged in deceptive, unfair and unconscionable commercial practices in failing to reveal material facts and information about the Product, which did, or

26

tended to, mislead Plaintiff ARMSTRONG and the New York Class about facts that could not reasonably be known by them;

b.  Defendant failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

c.  Defendant caused Plaintiff ARMSTRONG and the New York Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

d.  Defendant failed to reveal material facts to Plaintiff ARMSTRONG and the New York Class with the intent that Plaintiff ARMSTRONG and the New York Class members rely upon the omission;

e.  Defendant made material representations and statements of fact to Plaintiff ARMSTRONG and the New York Class that resulted in Plaintiff ARMSTRONG and the New York Class reasonably believing the represented or suggested state of affairs to be other than what they actually were;

f.  Defendant intended that Plaintiff ARMSTRONG and the New York Class rely on their misrepresentations and omissions, so that Plaintiff ARMSTRONG and the New York Class would purchase the Product; and

g.  Defendant knowingly and falsely represented and advertised that the Product was fit to be used for the purpose for which it was intended, to cause physiological changes to the structure and function of the skin in preventing, eliminating and/or reversing the effect of aging, when Defendant knew that the Product did not work as promised.

74.    Under all of the circumstances, Defendant's conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

75.    Defendant's actions impact the public interest because Plaintiff ARMSTRONG and the New York Class were injured in exactly the same way as thousands of others purchasing the Product as a result of and pursuant to Defendant's generalized course of deception.

76.    By committing the acts alleged in this Complaint, Defendant has misled Plaintiff ARMSTRONG and the New York Class into purchasing the Product, in part or in whole, because Plaintiff ARMSTRONG and the New York Class relied on Defendant's illegal, deceptive and misleading anti-aging claims as described herein. This is a deceptive business practice that violates NY GBL § 349.

77.    Defendant's anti-aging claims misled Plaintiff ARMSTRONG, and are likely in the future to mislead reasonable consumers. Had Plaintiff ARMSTRONG and the New York Class known of the true facts about the Product's failure to work as promised, they would not have purchased the Product and/or would have paid substantially less for another skin product.

78.    The foregoing deceptive acts, omissions and practices were directed at consumers.

79.    The foregoing deceptive acts, omissions and practices set forth in connection with Defendant's violations of NY GBL § 349 proximately caused Plaintiff ARMSTRONG and the New York Class to suffer actual damages in the form of, inter alia, monies spent to purchase the Product, and are entitled to recover such damages, injunctive relief, equitable and declaratory relief, other appropriate damages including punitive damages, and attorneys' fees and costs.

80.    Alternatively, Plaintiffs and Class members suffered damages equal to the premium price they paid on the basis of Sunday Riley's false and misleading Product claims.

This premium is the difference between the amount Sunday Riley was able to charge for the Product and the amount that truthfully advertised cosmetic moisturizers were sold for.

## COUNT II

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350
### (UNLAWFUL FALSE ADVERTISING ACT)
### (On Behalf of the New York Class)

81.    Plaintiff ARMSTRONG realleges and incorporates herein by reference all allegations contained above as if fully set forth herein and further alleges as follows:

82.    Plaintiff ARMSTRONG brings this claim individually and on behalf of the other members of the New York Class for violations of NY GBL § 350.

83.    NY GBL § 350 provides that false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state are unlawful.

84.    NY GBL § 350-a defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect."

85.    Any person who has been injured by reason of any violation of the NY GBL may bring an action in his own name to enjoin unlawful act or practice, an action to recover his actual damages or five hundred dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to ten thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

86.    As fully alleged above, by advertising, marketing, distributing, labeling and selling Bionic Anti-Aging Cream to Plaintiff ARMSTRONG and other members of the Class, Defendants engaged in, and continues to engage in, false advertising.

87.    Defendants engaged in false advertising by advertising, marketing, distributing and selling the Bionic Anti-Aging Cream as fit to be used for the purpose for which it was intended, to cause physiological changes to the structure and function of the skin in preventing, eliminating and/or reversing the effect of aging, when Defendant knew that the Product did not work as promised.

88.    Plaintiff ARMSTRONG and other members of the Class further seek to enjoin such unlawful deceptive acts and practices as described above. Plaintiff and other members of the Class purchased the Product, rather than an effective drug, because of the false, misleading, and deceptive Product claims. Each of the members of the Class will be irreparably harmed unless Defendants are enjoined from falsely advertising its Bionic Anti-Aging Creams with the anti-aging claims as described herein.

89.    Plaintiff ARMSTRONG and other members of the Class suffered a loss as a result of Defendant's false advertising. Specifically, as a result of Defendant's false advertising, Plaintiff and other Class members suffered monetary losses associated with the purchase of the Bionic Anti-Aging Cream, because they would not have purchased the Product had they known the truth about the Product, that it is not an effective drug and cannot change the physiological structure and function of the skin.

90.    In this regard, Defendant has violated, and continues to violate, NY GBL § 350, which makes false advertising unlawful. As a direct and proximate result of Defendant's violation of NY GBL § 350 above, Plaintiff ARMSTRONG and other members of the Class have suffered damages in an amount to be determined at trial.

## COUNT III

### VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT,
Cal. Civ. Code § 1750, et seq.
(On Behalf of the California Class)

91.     Plaintiff MOORE repeats and realleges each and every allegation contained above as if fully set forth herein and further alleges the following:

92.     Plaintiff MOORE brings this claim individually and on behalf of the other members of the California Class for Defendant's violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1761(d).

93.     This cause of action is brought pursuant to the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* (the "CLRA"). This cause of action seeks monetary damages and injunctive relief pursuant to California Civil Code § 1782.

94.     On or about June 6, 2016, an initial CLRA notice letter was served on Defendant. On or about August 25, 2016, a second CLRA notice letter which complies in all respects with California Civil Code § 1782(a) was served on Defendant through Defendant's counsel. Plaintiff MOORE sent Defendant and its legal counsel on behalf of herself and the proposed Class, a letter via certified mail, return receipt requested, advising Defendant that it is in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom. True and correct copies of Plaintiff MOORE's letters are attached hereto as **EXHIBIT F**.

95.     If Defendant fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to section 1782 of the Act, Plaintiff MOORE will amend this Complaint to add claims for actual, punitive and statutory damages, as appropriate.

96.    Defendant's actions, representations, and conduct have violated, and continue to violate, the CLRA because they extend to transactions that are intended to result, or that have resulted, in the sale of goods to consumers.

97.    Plaintiff MOORE and California Class members are consumers who purchased the Product for personal, family or household purposes. Plaintiff MOORE and the California Class members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d). Plaintiff MOORE and the California Class members are not sophisticated experts with independent knowledge of the manufacturing, packaging, advertising or selling of the Product.

98.    The Product that Plaintiff MOORE and other California Class members purchased from Defendant was a "good" within the meaning of Cal. Civ. Code § 1761(a).

99.    Defendant's actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

100.    Defendant's labeling and packaging of the Product violates federal and California law because it misleads consumers about the efficacy and benefits of the Product. The reasonable consumer is given the false impression that he/she is buying a cosmetic product that actually functions as a drug and causes physiological changes to the structure and function of the skin in preventing, eliminating and/or reversing the effect of aging as represented by Defendant.

101.    California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." By engaging in the conduct set forth herein, Defendant violated and continues to violate Section

1770(a)(5) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it misrepresents that the Product has characteristics or benefits which it does not have.

102.    Cal. Civ. Code § 1770(a)(9) further prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(9), because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it advertises goods with the intent not to sell the goods as advertised.

103.    Cal. Civ. Code § 1770(a)(16) prohibits "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not." By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(16), because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it represents that the Products have been supplied in accordance with previous representations when it has not.

104.    Plaintiff MOORE and the California Class members are not sophisticated experts about the testing and manufacturing processes or the packaging of the Product. Plaintiff MOORE and the California Class acted reasonably when they purchased the Product based on their belief that Defendant's representations were true and lawful.

105.    Plaintiff MOORE and the California Class suffered injuries caused by Defendant because (a) they would not have purchased the Product absent Defendant's illegal and misleading conduct as set forth herein, or if the true facts were known concerning Defendant's representations; and (b) the Product did not have the characteristics or benefits as promised.

106.    Plaintiff MOORE requests that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendant is not restrained from engaging in these types of practices in the future, Plaintiff MOORE and the members of the California Classes will be harmed in that they will continue to be unable to rely on Defendant's packaging and marketing representations.

COUNT IV

**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW,**
**California Business & Professions Code §§ 17200, et seq.**
**(On Behalf of the California Class)**

107.    Plaintiff MOORE repeats and realleges each and every allegation contained above as if fully set forth herein and further alleges the following:

108.    Plaintiff MOORE brings this claim individually and on behalf of the members of the proposed California Class for Defendant's violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*

109.    The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

110.    Defendant's labeling, packaging and advertising of the Product violates federal and California law because it misleads consumers about the efficacy and benefits of the Product. The reasonable consumer is given the false impression that he/she is buying a cosmetic product that acts as a drug and actually causes physiological changes to the structure and function of the skin in preventing, eliminating and/or reversing the effect of aging, as represented by Defendant.

111.    Defendant's business practices, described herein, violated the "unlawful" prong of the UCL by violating Sections 502 and 602 of the Federal Food, Drug, and Cosmetic Act, 21

34

U.S.C. § 352, 21 U.S.C. § 362, California Health & Safety Code § 111390, the CLRA, and other applicable law as described herein.

112.    Defendant's business practice, described herein, violated the "unfair" prong of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendant's advertising is of no benefit to consumers, and its failure to comply with the FDCA and parallel California laws concerning misleading product packaging offends the public policy advanced by the FDCA "to promote the public health" by "taking appropriate action on the marketing of regulated products." 21 U.S.C. § 393(b).

113.    Defendant violated the "fraudulent" prong of the UCL by misleading Plaintiff MOORE and the California Class to believe that quality representations about the Product were lawful, true and not intended to deceive or mislead the consumers.

114.    Plaintiff MOORE and the California Class members are not sophisticated experts about the characteristics or benefits of the Product. Plaintiff MOORE and the California Class acted reasonably when they purchased the Product based on their belief that Defendant's representations were true and lawful.

115.    Plaintiff MOORE and the California Class lost money or property as a result of Defendant's UCL violations because (a) they would not have purchased the Product absent Defendant's illegal conduct as set forth herein, or if the true facts were known concerning Defendant's representations; and (b) the Product did not have the characteristics or benefits as promised.

116.    Alternatively, Plaintiffs and Class members suffered damages equal to the premium price they paid on the basis of Sunday Riley's false and misleading Product claims.

This premium is the difference between the amount Sunday Riley was able to charge for the Product and the amount truthfully advertised cosmetic moisturizers were sold for.

## COUNT V

### VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW,
California Business & Professions Code §§ 17500, et seq.
(On Behalf of the California Class)

117.   Plaintiff MOORE repeats and realleges each and every allegation contained above as if fully set forth herein and further alleges the following:

118.   Plaintiff MOORE brings this claim individually and on behalf of the members of the proposed California Class for Defendant's violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*

119.   Under the FAL, the State of California makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state... in any advertising device ... or in any other manner or means whatever... any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

120.   Defendant engaged in a scheme of offering misbranded Product for sale to Plaintiff MOORE and the California Class members by way of product packaging, labeling, and advertising. These materials misrepresented the true content and nature of the misbranded Product. Defendant's advertisements and inducements were made in California and come within the definition of advertising as contained in Bus. & Prof. Code § 17500, *et seq.* in that the Product' packaging, labeling and advertising were intended as inducements to purchase Defendant's Product, and are representations disseminated by Defendant to Plaintiff MOORE

and the California Class members. Defendant knew that these representations were unauthorized, inaccurate, and misleading.

121.    Defendant's Product packaging, labeling and advertising violates federal and California law because it misleads consumers about the efficacy and benefits of the Product. The reasonable consumer is given the false impression that he/she is buying a cosmetic product that functions as a drug and actually causes physiological changes to the structure and function of the skin in preventing, eliminating and/or reversing the effect of aging, as represented by Defendant.

122.    Defendant violated § 17500, *et seq.* by misleading Plaintiff MOORE and the California Class about the characteristics and benefits of the Product as described herein..

123.    Defendant knew or should have known, through the exercise of reasonable care that the Product was misbranded, and that its representations about the characteristics and benefits of the Product were illegal, untrue and misleading.

124.    Plaintiff MOORE and the California Class lost money or property as a result of Defendant's FAL violations because (a) they would not have purchased the Product on the same terms absent Defendant's illegal conduct as set forth herein, or if the true facts were known concerning Defendant's representations; and (b) the Product did not have the characteristics or benefits as promised.

125.    Alternatively, Plaintiffs and Class members suffered damages equal to the premium price they paid on the basis of Sunday Riley's false and misleading Product claims.

## COUNT VI

### NEGLIGENT MISREPRESENTATION
### (On Behalf of the New York and California Classes)

126.    Plaintiffs reallege and incorporate herein by reference all allegations contained above as if fully set forth herein and further allege as follows:

127.    Defendant, directly or through their agents and employees, made false representations, concealments, and nondisclosures to Plaintiffs and members of the Class.

128.    In making the representations of fact to Plaintiffs and members of the Class described herein, Defendant has failed to fulfill their duties to disclose the material facts set forth above. The direct and proximate cause of this failure to disclose was Defendant's negligence and carelessness.

129.    Defendant, in making the misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the representations were not true. Defendant made and intended the misrepresentations to induce the reliance of Plaintiffs and members of the Class.

130.    Plaintiffs and members of the Class relied upon these false representations and nondisclosures by Defendant when purchasing the Product, which reliance was justified and reasonably foreseeable.

131.    As a result of Defendant's wrongful conduct, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for the Product and any interest that would have been accrued on those monies, all in an amount to be determined according to proof at time of trial.

132.    Alternatively, Plaintiffs and Class members suffered damages equal to the premium price they paid on the basis of Sunday Riley's false and misleading Product claims. This premium is the difference between the amount Sunday Riley was able to charge for the Product and the amount that truthfully advertised cosmetic moisturizers were sold for.

## COUNT VII

### BREACH OF EXPRESS WARRANTIES
### (On Behalf of the New York and California Classes)

133.    Plaintiffs reallege and incorporate herein by reference all allegations contained above as if fully set forth herein and further allege as follows:

134.    The Uniform Commercial Code Section 2-313 provides that an affirmation of fact or promise, including a description of the goods, becomes part of the basis of the bargain and creates an express warranty that the goods shall conform to the promise and to the description.

135.    At all times, New York, California and other states have codified and adopted the provisions of the Uniform Commercial Code governing the express warranty of merchantability.

136.    Plaintiffs, and each member of the Class, formed a contract with Defendant at the time Plaintiffs and the other members of the Class purchased the Bionic Anti-Aging Cream. The terms of that contract include the anti-aging promises and affirmations of fact made by Defendant on the Product's labels, packages and online product descriptions as described above. The anti-aging claims made by Defendant constitute express warranties that became part of the basis of the bargain, and are part of a standardized contract between Plaintiffs and the members of the Class on the one hand, and Defendant on the other. Plaintiffs and the Class members placed importance on Defendant's anti-aging claims.

137.    All conditions precedent to Defendant's liability under this contract have been performed by Plaintiffs and the Class.

138. Defendant breached the terms of this contract, including the express warranties, with Plaintiffs and the Class by not providing a Product that is effective as promised, as described above.

139. As a proximate result of Defendant's breach of their warranties, Plaintiffs and Class members have suffered damages in an amount of the purchase price of the Bionic Anti-Aging Cream products they purchased.

140. Alternatively, Plaintiffs and Class members suffered damages equal to the premium price they paid on the basis of Sunday Riley's false and misleading Product claims.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Class, seek judgment against Defendant, as follows:

a. An Order that this action be maintained as a class action and appointing Plaintiffs as representatives of their respective state Class;

b. An Order appointing the undersigned attorney as class counsel in this action;

c. An order finding in favor of Plaintiffs and the Classes;

d. Restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations, Plaintiff and the proposed Class members;

e. All recoverable compensatory and other damages sustained by Plaintiffs and the Class in amounts to be determined by the Court and/or jury;

f. Actual and/or statutory damages for injuries suffered by Plaintiffs and the Class and in the maximum amount permitted by applicable law

g.      An order (i) requiring Defendant to immediately cease its wrongful conduct as set forth in this Complaint; (ii) enjoining Defendant from continuing to misrepresent and conceal material information and conduct business via the unlawful, unfair and deceptive business acts and practices complained of herein; (iii) ordering Defendant to engage in a corrective advertising campaign; and (iv) requiring Defendant to reimburse Plaintiffs and all members of the Class the amounts paid for the Products;

h.      Statutory pre-judgment and post-judgment interest on any amounts;

i.      Payment of attorneys' fees and costs; and

j.      Such other relief as the Court may deem just and proper.

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs, on behalf of themselves and the Class, demands a trial by jury on all questions of fact raised by the Complaint.

Dated: December 2, 2016

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**

C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

By: _____
          C.K. Lee